**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
Premium Merchant Funding 18, LLC,
Premium Merchant Funding 26, LLC,

                              Plaintiffs,

          -against-                                          **CIVIL ACTION NO.:**

Scott Crandall Honan, Honan Property Management,          **VERIFIED COMPLAINT**
LLC, Honan Preferred Equity, LLC, Richmond Honan
Development & Acquisitions LLC, OVRH26 SPE,
LLC, Forsyth Physicians Center MOB1, LLC, Forsyth
Physicians Center SPE 1, LLC, FPC MOB1 Tenant
Partners, LLC, Resurgens Forsyth Medical Center,
LLC, Glenridge Lifehope SPE LLC, Glenridge
Lifehope JV, LLC, Glenridge Lifehope Mezz SPE,
LLC, Glenridge Lifehope HPE, LLC, Highpoint
Lifehope SPE, LLC, Regional One RH MOB 1 SPE,
LLC,

                              Defendants.
-------------------------------------------------------------X


          Plaintiffs, Premium Merchant Funding, 18, LLC ("PMF 18"), and Premium Merchant Funding 26,

LLC ("PMF 26" and collectively with PMF 18, "PMF"/ "Plaintiff"), by and through its undersigned

counsel, hereby alleges for their Complaint against defendants, Scott Crandall Honan, Honan Property

Management, LLC, Honan Preferred Equity, LLC, Richmond Honan Development & Acquisitions LLC,

OVRH26 SPE, LLC, Forsyth Physicians Center MOB1, LLC, Forsyth Physicians Center SPE 1, LLC,

FPC MOB1 Tenant Partners, LLC, Resurgens Forsyth Medical Center, LLC, Glenridge Lifehope SPE

LLC, Glenridge Lifehope JV, LLC, Glenridge Lifehope Mezz SPE, LLC, Glenridge Lifehope HPE, LLC,

Highpoint Lifehope SPE, LLC, Regional One RH MOB 1 SPE, LLC, as follows:

## PRELIMINARY STATEMENT[1]

1.   Plaintiffs, PMF, brings this action to redress the systematic and deliberate financial misrepresentations perpetrated by the defendant, Scott Crandal Honan, individually and via the use of the corporate defendants, Honan Property Management, LLC ,Honan Preferred Equity, LLC ,Richmond Honan Development & Acquisitions LLC ,OVRH26 SPE, LLC ,Forsyth Physicians Center MOB1, LLC ,Forsyth Physicians Center SPE 1, LLC,FPC MOB1 Tenant Partners, LLC ,Resurgens Forsyth Medical Center, LLC ,Glenridge Lifehope SPE LLC ,Glenridge Lifehope JV, LLC ,Glenridge Lifehope Mezz SPE, LLC ,Glenridge Lifehope HPE, LLC ,Highpoint Lifehope SPE, LLC, and Regional One RH MOB 1 SPE, LLC, (hereinafter referred to collectively as "Defendants").

2.   The case at hand unveils a disconcerting narrative where the Defendants, and particularly the individual Defendant, Scott Crandal Honan, deliberately partook in a sequence of concealed financial activities.

3.   The Defendants actions were strategically orchestrated to fabricate an illusion of financial stability and liquidity with the ultimate objective being to mislead the plaintiff into acquiring receivables that were not only significantly overstated but had also been previously allocated as collateral to other financiers.

4.   The Defendants scheme unfolded over the period leading up to March 2022, during which time the Defendants engaged with PMF 18 for a sale of receivables.

5.   Defendants continued deceptively through to the due diligence phase of a successive transaction, wherein the Defendants once again pledged their respective receivables; this was a calculated attempt to forge a veneer of fiscal responsibility and an ability to fulfill their financial commitments, thus prompting another transaction in May 2022.

---

[1] The headings throughout this Complaint serve solely for organizational purposes and do not constitute part of the substantive allegations; they are intended neither to guide nor limit the interpretation of the contents herein.

6.  Following the second transaction, however, the Defendants defaulted on their obligations thereby prompting an investigation and ultimately unveiling the scheme.

7.  Had the concealed information been disclosed, it would have significantly affected the plaintiff's risk assessment, and the advances in question would not have been approved.

8.  Through this action, the plaintiff seeks to hold the Defendants jointly and severally accountable for fraudulent misrepresentation, breach of contract, fraud in the inducement, and actual fraud.

9.  The plaintiff further seeks the rescission of the fraudulent contracts and punitive damages to deter such egregious conduct and to uphold the integrity of the financial lending process.

10. The facts of this case underscore not only a blatant breach of trust and contract but also an affront to the principles of transparency and honesty in financial dealings.

11. Plaintiff thereby places these matters before this Honorable Court to achieve a just resolution commensurate with the gravity of the Defendants' misconduct.

## JURISDICTION AND VENUE

12. This court has subject matter jurisdiction over this case. Pursuant to 28 U.S.C. § 1331, this court has federal question jurisdiction because the plaintiff's claim arises under the federal civil RICO statute, 18 U.S.C. §§ 1961-1968, which is a law of the United States.

13. This court also has subject matter jurisdiction over this case. Pursuant to 28 U.S.C. § 1332, this court has diversity jurisdiction because the plaintiff and the Defendant are citizens of different states and the amount in controversy exceeds $75,000.

14. Plaintiffs are foreign limited liability companies that maintain offices in the State of New York and maintain an office within the City and State of New York, are comprised of individual members who reside in New York, Florida and Puerto Rico, respectively.

15.  Plaintiffs are foreign limited liabilities companies that transact business in the State of New York and maintain an office within the City and State of New York, are comprised of individual members who reside in New York, Florida and Puerto Rico, respectively.

16.  Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(3) and the forum selection clause in the contract between the parties, provides that court action pursuant to the agreement must be brought "in a state or federal court located in the State and City of New York" and the "Merchant and Guarantor consent to the jurisdiction of those particular courts, and expressly waives any objection based on *forum non conveniens*, and agrees that such courts shall be the exclusive forum for any Permitted Court Action concerning any Dispute, notwithstanding that other courts may have jurisdiction over the parties and the subject matter." See respective Agreements Section 5.10, annexed hereto as Exhibits A and B

17.  This court has supplemental jurisdiction over the plaintiff's state law claims under 28 U.S.C. § 1367, because they are so related to the federal claim that they form part of the same case or controversy under Article III of the United States Constitution. The exercise of supplemental jurisdiction is not barred by any of the exceptions in § 1367(c), and there are no compelling reasons for declining jurisdiction.

18.  Venue is also proper in this Court under 28 U.S.C. §1391(b), because a substantial part of the events and omissions giving rise to this action occurred in this District.

## THE PARTIES

19. Plaintiff PMF 18, is a foreign limited liability company, duly authorized to transact business within the City and State of New York and maintains its principal place of business at 55 Water Street, 50th Floor, New York, New York.

20. Plaintiff, PMF 26, is a foreign limited liability company and maintains an office at 55 Water Street, 50th Floor, New York, New York.

21. PMF 18 and PMF 26 ("PMF"/ "Plaintiff") provide funding, financing, credit management and repair solutions to small businesses.

22. On May 3, 2022, PMF 26 entered into an agreement with Defendant, Scott Crandall Honan (referred to herein, from time-to-time as "Scott C. Honan"), individually and as an owner of the merchant, wherein PMF agreed to purchase a specified percentage of the Defendants'/merchants' future receivables of not less than $300,000 in value, for a purchase price of $200,000.

23. Along with the payment of various fees, as outlined in Appendix A of the Parties Agreement, the Defendants/merchants agreed to pay PMF a daily amount of $3,333.33 until the purchased amount was paid in full. A copy of the Parties Agreement has been annexed herewith as ***Exhibit A***.

24. Upon information and belief, Defendant Scott Crandall Honan is an individual, citizen, and resident of the State of Georgia residing at 3330 Preston Ridge Rd Ste 380 Alpharetta GA 30005.

25. Upon information and belief Defendant, Honan Property Management, LLC, is a Georgia limited liability company with an address of 3330 Preston Ridge Road, Suite 380, Alpharetta, GA 30005.

26. Defendant Scott Crandall Honan holds a 99% membership interest in Defendant Honan Property Management, LLC with the remaining 1% held by a trust titled the "Scott Honan and Descendant Trust"

27. Upon information and belief Defendant, Honan Preferred Equity, LLC is a Georgia limited liability company with a principal place of 3300 Preston Ridge Road, Suite 380, Alpharetta, GA 30005.

28. Upon information and belief, Defendant Scott Crandall Honan holds a majority membership interest in Defendant, Honan Preferred Equity, LLC.

29. Upon information and belief, Richmond Honan Development & Acquisitions LLC is a Georgia limited liability company that has a principal place of business at 975 Johnson Ferry Road, Atlanta, GA 30342.

30. Upon information and belief, Defendant Scott Crandall Honan holds a majority membership interest in Defendant, Richmond Honan Development & Acquisitions LLC.

31. Upon information and belief OVRH26 SPE, LLC is a Delaware Limited Liability Company with a principal place of business at 3330 Preston Ridge Road, Suite 380, Alpharetta, GA 30005.

32. Upon information and belief, Defendant Scott Crandall Honan holds a majority membership interest in Defendant, OVRH26 SPE, LLC.

33. Upon information and belief Forsyth Physicians Center Mob1, LLC, is a Georgia limited liability company treated as a partnership and a principal place of business at 4150 Deputy Bill Cantrell Memorial Road, Cumming, GA 30040.

34. Upon information and belief, Defendant Scott Crandall Honan holds a majority membership interest in Defendant, Forsyth Physicians Center Mob1, LLC, and is the listed partnership representative for the corporate Defendant.

35. Defendant, Resurgens Forsyth Medical Center, LLC, is also believed to be a Georgia limited liability company with a principal place of business at 1100 Northside Forsyth Dr., Suite 340, Cumming, GA 30041.

36. Upon further information and belief, Defendant Scott Crandall Honan at all times relevant to this action, maintained a 30% partnership interest in the Defendant, Forsyth Physicians Center Mob1, LLC.

37. Upon information and belief, Defendant FPC MOB1 Tenant Partners, LLC is a Georgia limited liability company with a principal place of business of 3330 Preston Ridge Road, Suite 380, Alpharetta, GA 3005.

38. Upon further information and belief, Defendant Scott Crandall Honan at all times relevant to this action, maintained a 70% interest in the Defendant, FPC MOB1 Tenant Partners, LLC.

39. Upon information and belief Defendant, Forsyth Physicians Center SPE 1, LLC, is a Delaware limited liability company with its principal place of business at 2007 Breckinridge Lane, Alpharetta, GA 30005.

40. Upon information and belief, Defendant Scott Crandall Honan at all times relevant to this action, maintained an interest in the Defendant, Forsyth Physicians Center SPE 1, LLC.

41. Upon information and belief, Defendant Glenridge Lifehope SPE LLC, is a Delaware limited liability company, with its principal place of business at 3330 Preston Ridge Road, Suite 380, Alpharetta, GA 30005.

42. Upon information and belief, Defendant Scott Crandall Honan at all times relevant to this action, maintained an interest in the Defendant, Glenridge Lifehope SPE LLC.

43. Upon information and belief Defendant, Glenridge Lifehope JV, LLC is a Georgia limited liability company with a principal place of business of 3330 Preston Ridge Road, Suite 380, Alpharetta, GA 30005.

44.  Upon information and belief, Defendant Scott Crandall Honan at all times relevant to this action, maintained an interest in or wholly owned all membership interests of the Defendant, Glenridge Lifehope JV, LLC.

45.  Upon information and belief Defendant, Glenridge Lifehope Mezz SPE, LLC, is a Delaware limited liability company with a principal place of business at 3330 Preston Ridge Road, Suite 380, Alpharetta, GA 30005.

46.  Upon information and belief, Defendant Scott Crandall Honan at all times relevant to this action, maintained an interest in or wholly owned all membership interests of the Defendant, Glenridge Lifehope Mezz SPE, LLC.

47.  Upon information and belief Defendant, Glenridge Lifehope HPE, LLC, is a Delaware limited liability company with a principal place of business located at 3330 Preston Ridge Road, Suite 380, Alpharetta, GA 30005.

48.  Upon information and belief, Defendant Scott Crandall Honan at all times relevant to this action, maintained an interest in or wholly owned all membership interests of the Defendant, Glenridge Lifehope HPE, LLC.

49.  Upon information and belief Defendant, Highpoint Lifehope SPE, LLC is a Delaware limited liability company with a principal place of business at 3330 Preston Ridge Road, Suite 380, Alpharetta, GA 30005.

50.  Upon information and belief, Defendant Scott Crandall Honan at all times relevant to this action, maintained an interest in or wholly owned all membership interests of the Defendant, Highpoint Lifehope SPE, LLC.

51. Upon information and belief Defendant, Regional One RH MOB 1 SPE, LLC is a Delaware limited liability company with a principal place of business of 3330 Preston Ridge Road, Suite 380, Alpharetta, GA 30005.

52. Upon information and belief, Defendant Scott Crandall Honan at all times relevant to this action, maintained an interest in or wholly owned all membership interests of the Defendant, Regional One RH MOB 1 SPE, LLC.

53. Throughout the duration of the events which are the basis of the present litigation, the individual Defendant, Scott Crandall Honan, and the associated corporate Defendants were complicit in advancing the within-described fraudulent scheme against the plaintiff.

54. This action seeks to obtain restitution from each Defendant named within this complaint, encompassing both the individual and the corporate entities, holding them accountable on a joint and several basis.

55. Defendant Scott Crandall Honan acted in his individual capacity and manipulated the corporate Defendants as vehicles essential to perpetrate the fraud detailed in this case.

56. Furthermore, each corporate Defendant provided substantial assistance in carrying out the deceit orchestrated by the individual Defendant.


## FACTUAL BACKGROUND

57. On March 10, 2022, the Defendants sold the plaintiff PMF 18, future receivables in the amount of $600,000.00 and extended an advance on said receivables to the Defendant in the amount of $400,000.00 ("Advance #1").

58. The plaintiff relied on the financial representations made by the Defendants and as specifically stipulated in the Merchant Agreement and Multi-Entity Addendum annexed hereto as **_Exhibit A._**

59. On May 2, 2022, the Defendants sold to the plaintiff, PMF 26, future receivables in the amount of $300,000.00 and extended an advance of said receivables to the Defendants in the amount of $200,000.00 ("Advance #2").

*60.* The plaintiff relied on the financial representations made by the Defendants and as specifically stipulated and predicated upon terms in the Merchant Agreement Multi-Entity Addendum annexed hereto as *Exhibit B.*

61. The merchant in the respective agreements identified itself as the Defendant, Honan Property Management, LLC, a Limited Liability Company organized under the laws of the State of Georgia with a physical address is 3330 Preston Ridge Road, Suite 380, Alpharetta, GA 30005.

*62.* Defendant, Scott Crandall Honan identified himself as the 100% owner of the corporate Defendant, Honan Property Management, LLC, as well as additional related entities identified in the Multi-Entity Addendum annexed to the respective Agreements. *Exhibit B.*

63. The Defendant selectively disclosed the following cash advances it had obtained in advance of the underwriting process.

| Cash Advance | Current Balance | Payment Frequency | Payment Amount |
|---|---|---|---|
| Retail | $147,380.26 | Weekly | $4,251.42 |
| Headway | $54,527 | Weekly | $1,143.92 |
| Fundation | $249,806 | Weekly | $4,306.81 |
| Delta | $480,095.26 | Weekly | $20,285.71 |
| Samson | $480,000 | Weekly | $20,285.71 |
| Click | $900,000 | Daily | $14,924 |

64. Defendants Provided Bank Accounts that reflected the named entities In our review of the bank statements provided

| Bank | Account Number | Account Name |
|---|---|---|
| Suntrust | 9624 | OVRH26 SPE, LLC |
| Suntrust | 8219 | GLENRIDGE LIFEHOPE SPE LLC |
| Suntrust | 0500 | FORSYTH PHYSICIANS CENTER SPE 1, LLC |

| Capital One | 5900 | HIGHPOINT LIFEHOPE SPE, LLC |
| Suntrust | 0511 | HONAN PROPERTY MANAGEMENT LLC |
| Suntrust | 5570 | HONAN PREFFERED EQUITY |

65.   The averages of the bank accounts were computed as follows:

| Average | Amount |
| --- | --- |
| True Deposits | $1,856,092.5 |
| Daily Balance | $960,921.55 |
| Ending Balance | $959,796.28 |

66.   The respective multi-entity agreements provided the following statement:

> *I hereby represent that all revenues associated with HONAN PROPERTY MANAGEMENT, LLC and related activities at or around the property located 3330 PRESTON RIDGE RD STE 380 ALPHARETTA, GA 30005 are accurately represented on the processing and bank statements provided by me in connection with the Agreement.*

67.   Defendants also covenanted and agreed:

> *I agree and covenant that the Merchant Agreement will be binding upon any and all future receivables generated by the following D/B/A's and or Legal Entities, as well as by any other business whether now in existence or formed after the date of this agreement with the participation of SCOTT HONAN or any related parties, that engages in any similar type of business activity:*
>
> *OVRH26 SPE, LLC*
> *GLENRIDGE LIFEHOPE SPE LLC*
> *GLENRIDGE LIFEHOPE JV, LLC*
> *FORSYTH PHYSICIANS CENTER SPE 1, LLC*
> *FORSYTH PHYSICIANS CENTER MOB1, LLC*
> *HIGHPOINT LIFEHOPE SPE, LLC*
> *HONAN PROP*
> *HONAN PREFERRED EQUITY, LLC*
> *REGIONAL ONE RH MOB 1 SPE, LLC*

***See Exhibits A & B.***

***DEFENDANTS GUARANTY & PERSONAL LIABILITY IN THE EVENT OF DEFAULT***

68. Pursuant to the respective agreements SCOTT CRANDALL HONAN is the owner of the Merchant. The Merchant is HONAN PROPERTY MANAGEMENT, LLC, and OVRH26 SPE, LLC; GLENRIDGE LIFEHOPE SPE LLC; GLENRIDGE LIFEHOPE JV, LLC; FORSYTH PHYSICIANS CENTER SPE 1, LLC; FORSYTH PHYSICIANS CENTER MOB1, LLC; HIGHPOINT LIFEHOPE SPE, LLC; HONAN PROPERTY MANGEMENT, LLC; HONAN PREFERRED EQUITY, LLC; REGIONAL ONE RH MOB 1 SPE, LLC.

69. Pursuant to the Respective Guaranties SCOTT CRANDALL HONAN Signed as Owner and as GUARANTOR on Behalf of Himself and OVRH26 SPE, LLC; GLENRIDGE LIFEHOPE SPE LLC; GLENRIDGE LIFEHOPE JV, LLC; FORSYTH PHYSICIANS CENTER SPE 1, LLC; FORSYTH PHYSICIANS CENTER MOB1, LLC; HIGHPOINT LIFEHOPE SPE, LLC; HONAN PROPERTY MANAGEMENT, LLC; HONAN PREFERRED EQUITY, LLC; REGIONAL ONE RH MOB 1 SPE, LLC.

70. Each agreement provided that that:

> *... in the Event of Default pursuant to Paragraph 3.1 the Agreement[s] this Agreement. Each Guarantor shall be jointly and severally liable for all amounts owed to PMF in the Event of Default.*

71. Each agreements provides pursuant to Paragraph 3.1 Events of Default. The occurrence of any of the following events shall constitute an "Event of Default" hereunder:

> *3.1.1 Merchant or Guarantor shall violate any term or covenant in this Agreement;*
> *3.1.2 Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false, or misleading in any material respect when made;*
> *3.1.3 The sending of notice of termination by Merchant or verbally notifying PMF of its intent to breach this Agreement;*

*3.1.4 The Merchant fails to give PMF 24 hours advance notice that there will be insufficient funds in the account such that the ACH of the specific daily amount will not be honored by Merchant's bank, and the Merchant fails to supply all requested documentation and allow for daily monitoring of its bank account;*

*3.1.5 Merchant shall transfer or sell all or substantially all of its assets;*

*3.1.6 Merchant shall make or send notice of any intended bulk sale or transfer by Merchant;*

*3.1.7 Merchant shall use multiple depository accounts without the prior written consent of PMF;*

*3.1.8 Merchant shall change its depositing account without the prior written consent of PMF; or*

*3.1.9 Merchant shall close its depositing account used for ACH debits without the prior written consent of PMF;*

*3.1.10 Merchant's bank returns a code other than NSF cutting PMF from its collections;*

*3.1.11 Merchant shall default under any of the terms, covenants, and conditions of any other agreement with PMF.*


### DEFENDANTS' FRAUDULENT FINANCIAL ACTIVITIES & EVENT OF DEFAULT

72.  Based on the information provided Premium was led to believe that its average Daily Balance in its bank accounts were available for purchase were at least 65% or that it was leveraged less than 35%.

73.  These representations grossly exaggerated the cash flow of the seller, such that the seller/Defendants and as more fully described herein, knew that such receivables did not exist and as such could not repay the advance or the amount due for said advance. Accordingly Defendant Defaulted on its obligations set forth in Section 3.1 by violating Section 3.1.2:

*3.1.2 Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false, or misleading in any material respect when made;*

*And*

*3.1.7 Merchant shall use multiple depository accounts without the prior written consent of PMF;*

74. Unbeknownst to the plaintiff, not only were these representations materially false but same were part of a broader scheme to fraudulently induce the purchase of receivables that were non-existent.

75. Subsequent forensic analysis of the Defendants' financial activities revealed an alarming pattern of behavior that included undisclosed advances, intentional omissions, inter-account money transfers, and other deceptive practices—all methodically designed to mislead creditors by inflating revenue appearance.

76. Despite these material representations and warranties, the Defendants sold receivables already pledged to PMF 18, and continued to make payments deceiving PMF 26 into engaging in a second purchase, only to find that there were no receivables to be had and that the receivables were again sold to another party.

### *DEFENDANTS' MISREPRESENTED CREDITS AS TRUE DEPOSITS*

77. It appears that several of the credits in the Defendants' accounts were Cash Advances from other merchant cash advance companies rather than bona fide deposits, and payments for ordinary business expenses.

78. On April 20, 2022, the Defendants' account, known as HONAN PROPERTY MANAGEMENT 0511, was credited with a sum of $100,000.00, originating from a source account ending in ****XX05.

79. On this same date, an account bearing the name HIGHPOINT LIFEHOPE SPE LL 8705 received a wire transfer referenced as XXXXXXXX-XXXX0903 for the amount of $150,000.00.

80. Subsequently, on that very day, these funds were then transferred from the receiving account to another account, as indicated by the transaction labeled "MOBILE TO ****XX11 - DEPOSIT TRANSFER."

81. The Defendants' activities reflect a concerted effort to craft a financial illusion — to present to the plaintiff an artificially robust and solvent business poised for future earnings.

82. Indeed, by manipulating their presented financial health through undisclosed debts, deceptive practices, and intentional misrepresentation of their financial activities, the Defendants aimed to fraudulently secure advances from the plaintiff.

83. Thus Plaintiff exaggerated its True Deposits by Over $250,000.

84. This pattern of behavior indicates a clear intent to defraud as it suggests without doubt, that the Defendants knowingly engaged in practices designed to hide their true financial state.

### *DEFENDANTS' MISREPRESENTED PAYMENTS TOWARDS ADVANCES*

85. As further outlined in detail below, Defendants had also obtained the following cash advances that were not disclosed in the underwriting process, which based on the frequency of payments indicate the amount it obtained in advances would have reduced the deposits significantly.

86. More specifically, the leverage ratio was calculated by dividing the total monthly payments of the cash advances by the average true deposits.

| Cash Advance | Current Balance | Payment Frequency | Payment Amount |
|---|---|---|---|
| Bluetarp Financial | $1,780.99 | Monthly | $1,780.99 |
| Fay Servicing | $13,812.50 | Monthly | $13,812.50 |
| Greenbox Capital | $5,768 | Monthly | $5,768 |
| Truist Loan | $769.45 | Monthly | $769.45 |
| Georgia United Credit Union | $961.47 | Monthly | $961.47 |
| NewCo (April 21, 2022) | $15,968 | Weekly | $3,992 |
| NewCo (May 10, 2022) | $18,620 | Weekly | $4,655 |

87. Based only on the above monthly payments Defendants' average balances were also significantly lower. The leverage ratio resulted to 37.55%, which was higher than the threshold of 35%.

88. This indicated that the Defendant was not representing the sufficient receivables to qualify for advances that fell below that leverage threshold set forth for the advance they applied for, and that they concealed their financial risk and debt burden in the underwriting process.

### DEFENDANTS' BANKING TRANSACTIONS REVEAL FURTHER DECEIT

89. After a review of the financial statements provided by the Defendant, there appear to be several additional payments to financing companies based on the bank description.

90. Additionally, Defendants executed a series of transactions through which precisely twelve payments, each in the amount of $675.70, were transferred from the account designated as HONAN HUMAN RESOURCES x2304 to an account held in the name of SCOTT HONAN A2A TRSFR SCOT T HONAN XXXXXX1309.

91. These payments, uniform in amount and consistent in their timing, were systematically made between February 2022 and April 2022, a period preceding the evaluation and approval process for both Advance #1 and Advance #2. This pattern of financial activity is notable for its regularity and timing, which coincides with the lead-up to the respective underwriting instances.

92. On April 25, 2022, to "VENDOR PAY SBFS LLC Highpoint Lifehope SPE ACH CORP DEBIT" in the amount of ($2,319.23), and then again seven days later on May 2, 2022 "VENDOR PAY SBFS LLC" in the amount of ($3,865.38).

93. On April 29, 2022 payment to FF FORWARD FINANCIN OVRH26 SPE, LLC ACH CORP DEBIT, in the amount of ($937.50), and then again on May 2, 2022, in the same amount.

94. The same pattern can be seen with other payments from HONAN PROPERTY MANAGEMENT 0511 to PREAUTHPMT RETAIL CAPITAL L HONAN PROPERTY MANAGEMENT ACH CORP DEBIT in equal payments of ($4,251.42) on eight (8) occasions between March 11, 2022 and April 29, 2022.

95. In the bank account ending in 0511, there were two withdrawals dated March 14, 2022, and April 14, 2022, amounting to $769.45 per withdrawal. The description of that transaction is 'Truist Loan' and based on the consecutive payments, this appears to be yet another cash advance of the company.

96. On February 7, 2022, there was a payment to Bluetarp Financial amounting to $1,780.99 found in a bank account ending in 5570.

97. On February 7, 2022, there was a $13,812.50 withdrawal in the same bank account ending in 5570 to Fay Servicing which is also a known financing company.

98. Aside from these advances, the Defendants have an advance to NewCo Capital on April 21, 2022, with a weekly payment of $3,992.

99. Defendants entered into yet *another* agreement with NewCo Capital on May 10, 2022, with a weekly payment of $4,655.

100. On April 28, 2022, in a bank account ending in 9624, there was a withdrawal of $5,768 to Greenbox Capital, *another* financing company.

101. In the bank account ending in 0511, there were another two consecutive payments to Georgia United Credit Union dated April 1, 2022, and May 1, 2022, amounting to $961.47 per withdrawal.

102. Incorporating these seven advances into the plaintiff's original calculations reveals that, under the presumption that all recorded bank payments were made monthly, the cumulative monthly payments amount to an astounding $*697,036.97*.

103. When this total is divided by the actual average deposits, the resulting leverage ratio is a significant 37.55%.

104. This calculation indicates an unequivocal failure to satisfy the plaintiff's financial criteria, which, by rights, should have precluded the Defendant from qualifying for the agreement.

105. The Defendants' deliberate failure to disclose pivotal financial details throughout the underwriting stage for Advance #1, and subsequently during the procurement of Advance #2, represents a flagrant violation of the obligation to disclose such information, as demanded by the statutes of New York law.

106. Under the laws of New York, an obligatory duty of disclosure is imposed upon parties in transactions such as these, and the Defendants have unequivocally contravened this mandate.

107. By concealing essential information that was foundational to the plaintiff's risk evaluation process, the Defendants engaged in activities that, with full transparency, would likely have prevented the plaintiff from extending Advance #1 as well as any further financial accommodations had the Defendants' true fiscal condition been apparent.

*A NEW TRANSACTION EMERGES*

108. On May 10, 2022, while still under the repayment obligation of Advance #1 and #2 and before the Defendants' receipt of the first payment on Advance #2, the Defendants sought and obtained an advance from NEWCO Capital Group VI, LLC, ("NewCo Capital").

109. Specifically, the non-party, NewCo Capital, agreed to purchase all rights to the Defendants' future receivables having an agreed-upon value of $139,650.00, already pledged to Premium.

110. A review of the Defendants' financial documents has since revealed that the Defendants were already paying NewCo before the May 2, 2022 Advance from the plaintiff.

111. On April 26, 2022, the Defendants' accounts showed a payment to "NewCo Capital Gr HighpointLifehope SPE ACH CORP DEBIT" in the amount of ($1,597.00).

112. In July 2022, NewCo Capital commenced an action against the Defendants, before the Nassau Supreme Court, in the matter titled "*NewCo Capital Group VI, LLC v. Forsyth Physicians Center SPE 1, LLC, et. al*.," and assigned Index Number 608962/2022 (the "NewCo Litigation") wherein

the plaintiff came to learn of several additional undisclosed entities that were used by Defendant Scott Crandall Honan to obtain even more advances.

113. Notably, some of these entities appear in the transactions in bank statements and were used in furtherance of the Defendants' efforts to induce the plaintiff to proceed with the underwriting of the purchase of the Defendants, collectively, the "Honan Receivables", as further described below.

114. The transfers to these entities were not disclosed as related entities, and were issued to accounts not provided in accordance with the express covenant that:

> ....the Merchant Agreement will be binding upon any and all future receivables generated by the following D/B/A's and or Legal Entities, as well as by any other business whether now in existence or formed after the date of this agreement with the participation of SCOTT HONAN or any related parties, that engages in any similar type of business activity

115. These activities also were an Event of Default, rendering each of the Defendant covenanting entities personally liable, where:

> 3.1.7 Merchant shall use multiple depository accounts without the prior written consent of PMF;

116. The following is the list of entities identified as Defendants in the NewCo Litigation and which have since been identified to be alter egos of the within-named Defendants and significantly, of the individual Defendant, Scott Crandall Honan.

117. Defendant, Scott Crandall Honan systematically and with the clear intent to defraud creditors such as the plaintiff, utilized these entities as a means to further perpetrate a fraud, which said list is not exhaustive but only representative of what the plaintiff has come to learn as of the date of the instant filing.

118. Entities Used across Both NewCo and Premium Advances:

- FORSYTH PHYSICIANS CENTER SPE 1 LLC

- GLENRIDGE LIFEHOPE JV, LLC

- GLENRIDGE LIFEHOPE SPE LLC

- HIGHPOINT LIFEHOPE SPE, LLC

- HONAN PROPERTY MANAGEMENT, LLC

- OVRH26 SPE, LLC

- SCOTT CRANDALL HONAN

119. The following 90 Entities identified in the NewCo suit were undisclosed:

| | | | |
|---|---|---|---|
| 1. | 3333 MEDICAL INVESTORS, LLC | 2. | HIGHPOINT LIFEHOPE PARKING SPE, LLC |
| 3. | 3333 PT PRACTICE SH, LLC | 4. | HIGHPOINT LIFEHOPE PARTNERS, LLC |
| 5. | 3333 SH INVESTORS, LLC | 6. | HIGHPOINT LIFEHOPE SH, LLC |
| 7. | 4150 HPE INVESTOR PEPP,LLC | 8. | HIGHPOINT LIFEHOPE SPE LLC |
| 9. | 4150 INVESTOR PEPP, LLC | 10. | HONAN HUMAN RESOURCES, LLC |
| 11. | 5009 LIFEHOPE LABS SPE, LLC | 12. | HONAN PREFERRED EQUITY JAM, LLC |
| 13. | 5009 MANNA PETROS HPE, LLC | 14. | HONAN PROPERTY MANAGEMENT II, LLC |
| 15. | 606 61ST AVENUE, LLC | 16. | HPE EMMAUS, LLC |
| 17. | ALPHARETTA HIGH PERFORMANCE MEDICAL INTEGRATION, LLC | 18. | HPE GLENRIDGE JAM,LLC |
| 19. | ALPHARETTA LIFEHOPE LAND SPE, LLC | 20. | HPE HIGHPOINT JAM, LLC |
| 21. | ALPHARETTA LIFEHOPE LAND, LLC | 22. | HPE OCULUS MANAGEMENT ACCOUNT, LLC |
| 23. | ALPHARETTA LIFEHOPE MOB 2 SPE, LLC | 24. | HPE WEALTH MIGRATE INVESTMENT, LLC |
| 25. | ALPHARETTA LIFEHOPE MOB 4 SPE, LLC | 26. | JERICHO ARCHITECTURE, LLC |

27. ALPHARETTA LIFEHOPE WELLNESS MOB, LLC

28. JERICHO DESIGN GROUP, LLC

29. ALPHARETTA PROFESSIONAL PRACTITIONERS,LLC

30. KINGDOM BUILDERS ARCHITECTURE, LLC

31. ALPHARETTA SPORTS SPECIFIC TRAINING, LLC

32. KINGDOM BUILDERS CONSTRUCTION JV, LLC

33. ATLANTA WELLPOINT CANCER DIAGNOSTICS, LLC

34. KINGDOM BUILDERS HPE II, LLC

35. BMO HPE RAPHA EQUIPMENT HOLDING, LLC

36. KINGDOM BUILDERS HPE, LLC

37. BMO RAPHA EQUIPMENT HOLDING, LLC

38. KINGDOM BUILDERS JERICHO, LLC

39. CATCHING POINT SH, LLC

40. LHC 5411 JV, LLC

41. EDENWILDE INVESTMENT HOUSE, LLC

42. LIFEHOPE EQUIPMENT LEASING, LLC

43. EMMAUS ELECTRICAL CONTRACTING, LLC

44. LIFEHOPE LABS HPE, LLC

45. EMMAUS ELECTRICAL MAINTENANCE, LLC

46. LIFEHOPE LABS SH, LLC

47. EMMAUS ELECTRICAL, LLC

48. LIFEHOPE MARKETING SH, LLC

49. EMMAUS HVAC MAINTENANCE, LLC

50. LIFEHOPE NETWORK

51. EMMAUS MASTER SERVICES, LLC

52. LIFEHOPE PHYSICIAN PARTNERS

53. EMMAUS PLUMBING, LLC

54. LIFEHOPE TECH

55. FORSYTH FITNESS AND WELLNESS, LLC

56. MANNA PETROS AIRCRAFT CO, LLC

57. FORSYTH PHYSICIANS CENTER MEZZ, LLC

58. MANNA PETROS ELAB OPCO, LLC

59. FPC LAND, LLC

60. MANNA PETROS ELAB REALCO, LLC

61. FREEMANVILLE LIFEHOPE HOUSE, LLC

62. OCULUS PRACTICE MANAGEMENT, LLC

63. FREEMANVILLE LIFEHOPE HPE, LLC

64. PALM CITY DEVELOPMENT L.C.

65. GENESIS HEALTH CARE GROUP, LLC

66. RH REALTY INCOME FUND II, LLC

67. GLENRIDGE LIFEHOPE PARKING HPE, LLC

68. RH REALTY INCOME FUND LLC

69. GLENRIDGE LIFEHOPE PARKING JV, LLC

70. RHD CAPITAL ADVISORS LLC

71. GLENRIDGE LIFEHOPE PARKING SH, LLC

72. RICHMOND HONAN

| | |
|---|---|
| 73. GLENRIDGE LIFEHOPE SH, LLC | 74. RICHMOND HONAN PROPERTY MANAGEMENT, LLC |
| 75. GLENRIDGE LIFEHOPE, LLC | 76. RICHMOND PROPERTY MANAGEMENT, INC. |
| 77. HEALTH MANAGEMENT AND BILLING, LLC | 78. ROYAL RIDGE INTERNAL MEDICINE, LLC |
| 79. HIGHPOINT JAM INVESTORS, LLC | 80. SCH FORSYTH, LLC |
| 81. HIGHPOINT LIFEHOPE JV, LLC | 82. SCH RAPHA EQUIPMENT HOLDING, LLC |
| 83. HIGHPOINT LIFEHOPE PARKING HPE, LLC | 84. SH GLENPOINT INVESTORS, LLC |
| 85. HIGHPOINT LIFEHOPE PARKING SH, LLC | 86. SH HIGHPOINT INVESTORS, LLC |
| 87. HIGHPOINT LIFEHOPE PARKING SPE, LLC | 88. SMARTCARE HPE, LLC |
| 89. HIGHPOINT LIFEHOPE PARTNERS, LLC | 90. WINDOVER INTERNATIONAL, INC |

120. The following entities were identified in the NewCo suit but are partners or owners of the Guarantor entities in the agreements:

- Richmond Honan Development & Acquisitions LLC

- Glenridge Lifehope HPE, LLC

121. The following entities did not appear in either the NewCo, suit or in the Agreements, however they appear to be undisclosed partners or entities used for avoiding obligations under the agreement:

- FPC MOB1 Tenant Partners, LLC

- Glenridge Lifehope Mezz SPE, LLC

- Resurgens Forsyth Medical Center, LLC

122. The Defendants, which include a network of interconnected corporate entities and the individual Scott Crandall Honan, unequivocally pledged the receivables from several organizations bound by the NewCo agreement.

123. In explicit terms, these entities include, but are not limited to, FORSYTH PHYSICIANS CENTER SPE 1, LLC, GLENRIDGE LIFEHOPE JV, LLC, GLENRIDGE LIFEHOPE SPE LLC, HIGHPOINT LIFEHOPE SPE, LLC, HONAN PROPERTY MANAGEMENT, LLC, and OVRH26 SPE, LLC.

124. Additionally, personal assurances were made by Scott Crandall Honan, who purported to hold a 100% ownership stake in these companies and exercised managerial control through the Defendant, Honan Property Management, LLC.

125. A meticulous examination of tax records has unveiled a critical discrepancy. According to tax filings of Honan Property Management, LLC, SCOTT C HONAN of 212 KINGSLEY WAY, WOODSTOCK, GA 30188 is the 99% owner, and the THE SCOTT HONAN AND DESCENDANT TRUST of 212 KINGSLEY WAY WOODSTOCK, GA 30188 is the 1% owner.

126. It has emerged that contrary to prior assertions, ownership of FORSYTH PHYSICIANS CENTER MOB1, LLC is fractionally held, with FPC MOB1 Tenant Partners, LLC possessing a 30% stake and Resurgens Forsyth Medical Center, LLC holding a 70% interest.

127. GLENRIDGE LIFEHOPE JV, LLC, was also an entity pledged to be 100% owned by Honan, yet its 2% ownership partners, GLENRIDGE LIFEHOPE HPE, LLC's receivables were also pledged to both Plaintiffs and to NewCo.

128. While Glenridge Lifehope, LLC the 98% owner of GLENRIDGE LIFEHOPE JV, LLC was only pledged to NewCo. This entity was thus encumbered and undisclosed.

129. These facts stand in sharp contrast to the representations previously made by the Defendants, which led plaintiffs to believe that Scott C Honan, alongside Honan Property Management, LLC, maintained complete ownership and managerial control over the said entity and indeed, directly contradicts the totality of ownership and control claimed by the Defendants.

130. The Defendants' commitment to the plaintiffs was built on the portrayal of an uncomplicated and undivided ownership structure that has been undercut by the plaintiff's newly uncovered ownership details.

131. The plaintiff's findings are not merely clerical discrepancies but substantial deviations that palpably shake the foundation of trust upon which the agreements with the Plaintiffs were formed.

### THE MATERIAL MISREPRESENTATIONS

132. In the Defendants' quest to secure multiple advances, Defendants employed a variety of deceptive tactics to craft an illusion of financial health and reliability.

133. Each of the misrepresentations contributed to painting a misleading picture for the plaintiff, casting aside any doubts about the Defendants' creditworthiness.

134. First, Defendants manipulated their bank statements to showcase a high average daily balance.

135. This was achieved through the strategic use of frequent interbank transfers, creating the facade of a steady and robust cash flow.

136. Consistent inflow and outflow across accounts were intended to project a false sense of recurring revenue, effectively reducing any immediate concerns regarding potential non-sufficient funds (NSF) issues.

137. Such a tactic was used by Defendants to mislead a creditor into believing that the business was continuously generating income and was, therefore, less risky to lend to.

138. Second, when it came to representing the company's profitability, the Defendants provided outdated financial information.

139. By only submitting the financial statements for the year-end of 2021, the Defendants withheld recent data that would have reflected significant alterations in the company's financial status from January to March 2022.

140. This period, devoid of updated financial disclosures, held material events or financial changes, that would have served to greatly impact the company's profitability.

141. Defendants lack of transparency effectively left the plaintiff unable to accurately assess any potential risks of downturns that occurred post-2021, which irrefutably. Influenced the lending decisions.

142. Defendants' misrepresentations suggest a calculated strategy by the Defendants to obscure the true nature of their financial predicament.

143. The implication of these actions is twofold: on the one hand, they prevented the plaintiff from making a well-informed lending decision; on the other hand, they increased the Defendants' chance of obtaining advances under the guise of stability and profitability—advances that the Defendants were not entitled to or capable of repaying based on their actual financial situation.

144. Defendants' conduct serves to undermine the trust essential for any financial transaction and also violates legal statutes governing accurate and full disclosure during financial transactions. It demonstrates a pattern of willful deceit aimed at exploiting the lending process to the Defendants' benefit, to the peril of the plaintiff and other unsuspecting creditors.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Fraudulent Misrepresentation)**

145. Plaintiffs repeat, reallege, and incorporate by reference the foregoing allegations as if fully set forth herein.

146. Defendants misrepresented or omitted material facts, which were false and known to be false by the Defendant, to induce the plaintiff to rely upon them.

147. Defendants intended that the plaintiff rely on these representations.

148. Plaintiff justifiably relied on Defendant's misrepresentations and omissions and entered into the contracts.

149. Within the underwriting process for Advance #1, Defendants represented that their cash flow was such that their leverage and current debt were much higher than disclosed, which was a material misrepresentation.

150. Defendants had knowledge of the falsity of this representation, evidenced by the omission of several payments which were not cash flow, but advances or receivables it already pledged, as well as *pro forma*'s that were created to present an unrealistic view of what receivables were in fact available.

151. The Defendants intended Plaintiff to rely upon this misrepresentation, aiming to secure Advance #1, with intent illustrated by the provision of select bank statements that gave the false impression of high revenue, the using that revenue and additional advances to show additional revenue in advance of seeking Advance #2.

152. Plaintiff reasonably relied upon this misrepresentation by extending Advance #1 and then Advance #2 each showing that the revenue encumbrance was below 35%.

153. As a result, Plaintiff suffered damages, specifically the loss of the bargained for receivables, and the loss of the advance that it extended to Defendants which deprived Plaintiff of the use of said funds.

154. As a direct result of Defendants' fraudulent actions, Plaintiff has suffered injury in an amount to be determined at trial.

### AS AND FOR A SECOND CAUSE OF ACTION
**(Fraud in the Inducement)**

155. Plaintiffs repeat, reallege, and incorporate by reference the foregoing allegations as if fully set forth herein.

156. Defendants, by way of deception, false pretenses, and intentional misrepresentation, induced the plaintiff to enter into the contracts.

157. The plaintiffs justifiably relied on the Defendants' misrepresentations in agreeing to the contracts.

158. Defendants misrepresented their respective finances, with the intent to induce Plaintiff to purchase future receivables, based on projections of revenue it knew were inflated and untrue.

159. Defendants knew this representation was false because in presenting the bank records, to show its average balances, Defendants did not disclose that such balances were transferred from one account to another, or that credits to the accounts were from other cash advances it received.

160. Plaintiffs, believing the truth of the Defendants' statements, advanced funds based on said representations on two occasions based on the false representation of solvency.

161. Plaintiffs suffered damages such as the loss of the benefit of the receivables and the loss of the funds it advanced on account of such representations on the cash flow of the accounts.

162. As a direct consequence, the plaintiffs have suffered damages and harm in an amount to be determined at trial.

## AS AND FOR A THIRD CAUSE OF ACTION
**(Breach of Duty to Disclose/Breach of Contract)**

163. Plaintiffs repeat, reallege, and incorporate by reference the foregoing allegations as if fully set forth herein.

164. The Defendants had a duty to disclose all material financial information to the plaintiff, as the plaintiff could not ascertain such information through the exercise of ordinary intelligence.

165. Defendants breached the duty to disclose by concealing material information that was critical for the plaintiff's risk assessment.

166. The plaintiffs and Defendants entered into contracts that required the Defendants to truthfully disclose all material financial information.

167. The Defendants breached the contracts by failing to disclose such material information.

168. The Defendants' breach was material to the contracts.

169. Plaintiffs at all times abided by the terms of the contracts.

170. Defendants committed to disclosing all of their financial obligations, and their ownership interest in the guaranteeing entities which they failed to do.

171. Defendants' failure to disclose the preexisting pledge of receivables to other entities, and the further encumbrance of receivables, including the advances plaintiffs directed to Defendants represents a material breach of the duty to disclose.

172. This breach directly resulted in plaintiffs issuing Advance #2 under false pretenses, particularly because the payments made during the periods between Advance #1 and Advance #2, were the very funds it received in advances - essentially cannibalizing itself.

173. Plaintiffs have suffered financial damages due to Defendants' non-disclosure, exemplified by the selective disclosure of entities from which it drew advances, and which were otherwise encumbered.

174. As a direct and proximate result of the Defendants breach, the plaintiffs have suffered actual damages in an amount to be determined at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Fraud)

175. Plaintiffs repeat, reallege, and incorporate by reference the foregoing allegations as if fully set forth herein.

176. The Defendants intentionally represented false information as true, concealed information that should have been disclosed, and did so with the intent to deceive the plaintiffs.

177. Defendants fraudulently represented, the nature of their organization, the state of its finances, and the nature of their obligations, which plaintiffs reasonably and to their detriment, regarded as true.

178. Evidence of the Defendants' knowledge of the falsehood using multiple accounts, failures to provide consolidated finances, and failure to advise of other entities it controlled or was controlled by.

179. Plaintiffs issued Advances based on these representations, specifically Advance #1 and then Advance #2.

180. Plaintiffs' resultant damages include the plaintiffs' loss of the benefit of the receivables and, loss of the funds advanced on account of such representations on the cash flow of the accounts.

181. As a result of the Defendants' intentional actions and concealments, the plaintiffs suffered damages and harm in an amount to be determined at trial.

### AS AND FOR A FIFTH CAUSE OF ACTION
#### (Unjust Enrichment)

182. Plaintiffs repeat, reallege, and incorporate by reference the foregoing allegations as if fully set forth herein.

183. As a result of plaintiffs reasonable reliance on Defendants materially false and misleading misrepresentations and omissions, as detailed above, the plaintiffs agreed to issue, and indeed funded, a combined total of $600,000 to the Defendants.

184. The Defendants were thereby enriched at the plaintiffs' expense and detriment.

185. It is against equity and good conscience to permit the Defendants to retain this unjustly obtained benefit.

186. Defendants received two (2) Advances from plaintiffs amounting to $900,000 leaving them unjustly enriched.

187. The enrichment occurred through the Defendants' deceptive conduct, which included using other undisclosed advances to inflate its revenue and, omission of other entities or obligations which would be used to pay obligations Defendants did not disclose.

188. This enrichment came at the financial detriment of plaintiffs, who would not have extended these Advances had they known of the Defendants' insolvency, or that Defendants already pledged their receivables to other entities.

189. Plaintiffs seek restitution, including the return of payments made, and interest, along with all other benefits the Defendants received at the plaintiffs' expense.

190. Thus, the plaintiffs are entitled to restitution in an amount to be determined at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Civil Rico Violation 18 U.S.C. §1962[c])

191. Plaintiffs repeat, reallege, and incorporate by reference the foregoing allegations as if fully set forth herein.

192. Defendants, including the individual Defendant, Scott C. Honan along with the within-named corporate Defendants, constitute an "enterprise" as defined by 18 U.S.C. § 1961(4), that is, a group of individuals and entities associated in fact, which affected interstate commerce.

193. From at least January 2021 to March 2022, Defendants conducted the affairs of the enterprise through a pattern of racketeering activity as defined under 18 U.S.C. § 1961(1).

194. This "pattern" is evidenced by at least two acts of racketeering (predicate acts) within a ten-year period, not isolated incidents, related to each other and amounting to, or posing a threat of, continued criminal activity.

195. On multiple specific dates between February 2022 and April 2022, Defendants engaged in acts of mail and wire fraud, in violation of 18 U.S.C. § 1341 and § 1343 respectively, which are actionable as predicate acts under RICO.

196. For instance, Defendants performed frequent interbank transfers to artificially inflate the average daily balance in their bank accounts, evidenced by bank statements reviewed by plaintiffs as stated above, with the intent to misrepresent their cash flow.

197. Furthermore, Defendants withheld critical financial information from the plaintiffs during the underwriting process.

198. Specifically, Defendants provided plaintiffs with only the year-end financial statement for 2021, thereby omitting any adverse financial developments that occurred between January 2022 and March 2022.

199. This misrepresentation through omission was effectuated through electronic and telephonic communications that crossed state lines, as identified above, and as further evidenced and identified in the Defendants' respective bank records.

200. On April 20, 2022, Defendants effected a wire transfer of $150,000 referenced as XXXXXXXX-XXXX0903, immediately after which a series of further transfers were executed to perpetuate the illusion of legitimate business transactions and obscure the true financial state of the enterprise.

201. Defendants falsely presented ownership and control over various entities, with the individual Defendant, Scott C. Honan, claiming 100% ownership.

202. Defendant, Scott C. Honan's aforementioned representation was and is, a material misrepresentation uncovered by a subsequent tax document analysis, indicating actual ownership by FPC MOB1 Tenant Partners, LLC and Resurgens Forsyth Medical Center, LLC.

203. The acts of wire fraud were crucial in facilitating the aforementioned fraudulent advances and inter-account transfers and were not isolated incidents, but part of an orchestrated scheme intended to deceive and defraud creditors.

204. Indeed, as a result of the Defendants within described actions, the plaintiffs, over an extended period, advanced two (2) payments to the Defendants which but for the Defendants' misrepresentations and falsifications of records, would not have been advanced by the plaintiffs.

205. As a result of the pattern of racketeering activity, plaintiffs have sustained injuries to their business or property, including but not limited to significant financial losses due to granting Advance #1 and Advance #2 based on the Defendants' deceitful misrepresentations.

## AS AND FOR AN SEVENTH CAUSE OF ACTION
### (Attorney's Fees and Costs)

206. Plaintiffs repeat, reallege, and incorporate by reference the foregoing allegations as if fully set forth herein.

207. The contracts entitle the prevailing party to an award of their respective reasonable attorney fees and costs in any litigation arising from or relating to the advances. See ***Exhibits A & B.***

208. Further, plaintiffs are entitled to the recoupment of their reasonable attorneys' fees and costs associated with this action as well as their expenses associated with their respective investigations of Defendants applications pursuant to 18 U.S.C. §1964.

209. Accordingly, the plaintiffs are entitled to recover their reasonable attorney's fees and costs at the conclusion of this litigation for all such expenditures made by plaintiffs that but for the Defendants' within actions, would not have been expended or otherwise necessary.

## PUNITIVE DAMAGES ARE APPROPRIATE AND DEMANDED

210. Plaintiffs repeat, reallege, and incorporate by reference the foregoing allegations as if fully set forth herein.

211. By virtue of the actions undertaken by each of the respective Defendants, and incredibly by the individual Defendant, Scott C. Honan, as outlined in detail above, the imposition of punitive damages is not only appropriate but essential.

212. The deliberate and systematic pattern of deception demonstrated by the Defendants, which includes the egregious manipulation of financial statements and the strategic concealment of critical information, exhibits a level of calculated malfeasance and an egregious disregard for the rights and interests of the plaintiffs that goes beyond mere negligence or breach of contract.

213. Such willful misrepresentations and fraudulent activities undermine the fundamental tenets of fair dealing and integrity in commercial transactions, causing substantial harm to plaintiffs.

214. The gravity and brazenness of the Defendants' conduct warrant the imposition of punitive damages as a means to serve both as a deterrent against future similar conduct by Defendants or others and to signal the judiciary's censure of such reprehensible behavior.

215. It is the punitive damages that stand to affirm the principle that intentional and malicious actions causing harm to others will attract severe legal consequences commensurate with their severity.

216. Accordingly, plaintiffs request the imposition of punitive damages in a sum not less than three times the consequential and/or compensatory damages to be awarded following a trial of this action.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully prays for judgment:

A. Awarding Plaintiffs restitution and damages, as against each of the within named Defendants, jointly and severally, including costs and fees, of at least one million dollars ($1,000,000);

B. Awarding plaintiffs consequential damages as against each of the within named Defendants, jointly and severally, in an amount to be determined at trial;

C. Awarding the plaintiffs punitive damages due to the malicious, willful, and wanton nature of the Defendants' conduct;

D. Pre- and post-judgment interest on any amounts awarded from the date of Defendants' applications for the within advancements until such time as paid in full;

E. Voiding the advance agreements annexed hereto as ***Exhibits A and B***, respectively;

F. For a judgment against each of the within Defendants, jointly and severally, for threefold the damages plaintiffs have sustained by reason of the violation of 18 U.S.C. § 1962(c), and where appropriate, interest on that amount from the date of the injury;

G. For all costs and disbursements of this action, including reasonable attorney fees as provided by 18 U.S.C. § 1964(c), as well as the underlying contracts providing for such an award, in an amount to be determined by this Court at a later date;

H. And, awarding the plaintiffs with such other and different relief as this Court may deem just and proper.

Dated: February 14, 2024
      West Hempstead, New York

                            LAW OFFICE OF STEVEN A. FELDMAN & ASSOCIATES, PLLC

                            Steven A. Feldman, Esq.
                            *Attorneys for Plaintiffs, PMF*
                            763 Dogwood Avenue
                            West Hempstead, New York 11552
                            Telephone: (516) 537-8357
                            steven@safesq.net